# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        Plaintiff,

  v.                                                                             **Case No. 16-CR-198**

**DARYL WALTERS**
        **Defendant.**

## STATEMENT OF REASON MEMORANDUM

Defendant Daryl Walters pleaded guilty to theft of mail and assaulting/impeding a postal employee, and I set the case for sentencing. The charges arose out of an incident in which defendant and a co-actor attempted to take two parcels (which, as it turned out, contained 10 kilograms of marijuana) from a postal employee, struggling with him when he resisted.

In imposing sentence, the district court must first determine the defendant's imprisonment range under the guidelines, then make an individualized assessment of the appropriate sentence based on the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Kappes, 782 F.3d 828, 837 (7th Cir. 2015). This memorandum sets forth the reasons for the sentence imposed.

## I. GUIDELINE CALCULATION

Defendant's pre-sentence report ("PSR") set a base offense level of 14 on the mail theft count, as the taking of a controlled substance was an object of the offense. U.S.S.G. § 2B1.1(c); U.S.S.G. § 2D1.1(c)(13). On the assault count, the PSR set a base level of 10, U.S.S.G. § 2A2.4(a), then added 3 levels because the offense involved physical contact, U.S.S.G. § 2A2.4(b)(1)(A). The PSR grouped the two counts, U.S.S.G. § 3D1.2(c), then

subtracted 2 levels for acceptance of responsibility, U.S.S.G. § 3E1.1, for a final offense level of 12. The PSR set the criminal history category at III, based on a prior unlawful firearm possession offense, for which defendant was sentenced to 3 years probation and 120 days jail, U.S.S.G. § 4A1.1(b), and for which he was on supervision at the time he committed the instant offenses, U.S.S.G. § 4A1.1(d). Level 12 and category III produced an imprisonment range of 15-21 months. I adopted these calculations without objection.

## II. SECTION 3553(a)

A. **Sentencing Factors**

Section 3553(a) directs the court to consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the [advisory sentencing guideline range;]

(5) any pertinent policy statement . . . issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

2

18 U.S.C. § 3553(a).

The court must, after considering these factors, impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Id. In determining a sufficient sentence, the district court may not presume that a guideline term would be proper. E.g., United States v. Coleman, 763 F.3d 706, 708 (7th Cir. 2014). Rather, after calculating the advisory range so that it "can derive whatever insight the guidelines have to offer, [the district court] must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).

**B.    Analysis**

    **1.    The Offense**

The convictions in this case were for stealing mail and assaulting a postal employee, but they arose out of a drug offense. On November 17, 2016, postal employee "S.K.P." tried to deliver two large parcels to an address in Milwaukee. S.K.P. parked his delivery van in front of the address, and as he carried the parcels up the steps to the porch of the residence a man walked up and told S.K.P. the parcels were his. S.K.P. requested identification, but the man responded he did not have his identification; a friend coming down the street supposedly had it.

Defendant then arrived at the residence, claiming the parcels were his. He too was unable to provide any identification. S.K.P. picked up the parcels from the porch and told the men that after they found their identification they could retrieve their parcels from the post office.

3

Defendant and the co-actor climbed the steps from the sidewalk towards the porch of the residence as S.K.P. was carrying the parcels down the steps. The men knocked the parcels from S.K.P.'s arms, retrieved them from the ground, and began to run away. S.K.P. screamed at the men to stop and pursued the co-actor, who was carrying one parcel, for a couple of blocks. The co-actor eventually threw the parcel over a fence into a backyard, then tried to get over the fence himself. S.K.P. attempted to stop the co-actor and as they engaged in a physical altercation, the co-actor yelled to defendant to "Get him off me!" Defendant dropped the package he was carrying and attacked S.K.P. from behind, forcing S.K.P. to release the co-actor. The co-actor was able to get over the fence, where he picked up the parcel and ran through neighboring backyards.

Defendant threw his own parcel over a fence and attempted to flee, but S.K.P. then engaged defendant. During this altercation, defendant hit S.K.P. in the groin, allowing him to get away. S.K.P. pursued defendant, caught him, and another physical altercation ensued. A woman yelled from her porch asking if she should call 911, and S.K.P. yelled back that she should. Defendant was again able to free himself and began to run. S.K.P. continued to pursue him while yelling at him to stop. Eventually, S.K.P. tackled defendant. With the assistance a witness, defendant was detained until police arrived.

When the police arrived, officers recovered the parcel defendant had thrown over a fence; the parcel carried by the co-actor was found abandoned along the side of a nearby alley. The parcels each contained over five kilograms of high grade marijuana.

### 2. **The Defendant**

Defendant was very young, just 19. At age 18, he was convicted of unlawful firearm possession, receiving probation with jail time. He was on probation for that offense at the time

he committed these crimes but was not revoked.

Defendant was raised by his mother in California, and it appeared he had a decent childhood with his extended family there. Apparently, he came to visit a family friend in Wisconsin in the fall of 2016; shortly thereafter, he was arrested for these offenses. When he was released on bond in December 2016, he relocated to Columbus, Georgia to reside with an aunt, attending barber school. In April 2017, I allowed him to move back to California, where he lived with his grandmother. He was able to obtain employment in California but planned to return to barber school after resolution of this matter.

Substance abuse has been an issue, with marijuana use starting at age 14. Defendant admitted smoking daily from the age of 18 until his arrest. He indicated he was under the influence of marijuana when he committed these offenses. To his credit, all of his screens on pre-trial release had been negative. Defendant was a high school graduate, with some additional college education and a decent work record, which was also to his credit.

### 3. The Sentence

The guidelines called for a term of 15-21 months in prison, and the government recommended a sentence of 12 months and 1 day, stressing the seriousness of the offenses and defendant's status on probation at the time he committed them. Stressing his age and good conduct on bond, defendant asked for a sentence served in the community. Under all the circumstances, I found a sentence along the lines recommended by the defense sufficient.

First, while these were serious offenses, I took into account that defendant was a teen at the time he committed them. Courts and researchers have recognized that given their immaturity and undeveloped sense of responsibility, teens are prone to doing foolish and impetuous things, like stealing parcels to get marijuana and struggling with postal carriers.

5

See, e.g., Miller v. Alabama, 567 U.S. 460, 471 (2012) (collecting cases and authorities). Defendant's drug use at the time also likely played a role in his poor decision-making, and it appeared that he was brought into this by the co-actor, also not unusual with young offenders, who are more susceptible to peer pressure. Further, it did not appear that defendant or his co-actor wanted to hurt the postal employee; rather, they were trying to get the parcels and run off.

Second, while there was a need to protect the public and deter, I found that these goals could be accomplished in the community. Regarding the guidelines' prison recommendation, I found that criminal history category III somewhat overstated the seriousness of defendant's prior record. He had just one prior adult conviction, a misdemeanor, which scored all 4 of his points. He had no prior felonies, and he had not previously served prison time. Defendant was on supervision at the time he committed these offenses, but it appears to have been highly informal. He would be watched much more closely on federal supervision. The effectiveness of federal supervision was demonstrated by defendant's conduct on pre-trial release, which included just one violation (travel out of state without permission to attend a funeral). All drug screens had been negative, a significant fact given the contribution of marijuana use to the offenses. If defendant could stay drug free, he would be less likely to re-offend. He also seemed to have plans for the future. These factors suggested that supervision with strict conditions, including drug testing and treatment, would suffice.[1]

---

[1] As the government correctly noted, while factors like youth and drug addiction can mitigate a defendant's culpability, they may also suggest an increased risk to the public. Several months shy of his twentieth birthday, defendant was not yet at the point on the curve when recidivism starts to sharply decline. However, the record showed that defendant had separated himself from the negative peers who led him into these offenses, returned to his extended family in California, and taken steps to overcome his substance abuse.

6

## III. CONCLUSION

Therefore, I imposed a sentence of time served, based on the roughly 30 days defendant spent in pre-trial detention, followed by three years of supervised release with a condition of 6 months home confinement. The home confinement, coupled with the time in pre-trial detention, served as just punishment, while the supervision with close monitoring provided deterrence and public protection.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2017

/s Lynn Adelman
LYNN ADELMAN
District Judge